IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Frances S. Truesdale, ) | |
| ) | Civil Action No. 6:07-4108-MBS-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| John Ozmint, SCDC Director, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined to Leath Correctional Institution pursuant to orders of commitment from the Clerk of Court from Fairfield County. At the January 1996 term, the Fairfield County Grand Jury indicted the petitioner for murder (96-GS-20-0029). The petitioner was represented at the trial level by attorneys Robert C. Fitzsimmons and James B. Loggins. From November 18-20, 1996, the petitioner was tried before the Honorable Don S. Rushing, and a jury. The jury convicted the petitioner as charged. Judge Rushing sentenced the petitioner life for murder. A timely notice of appeal was filed from the petitioner's convictions and sentences.

Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, represented the petitioner in her direct appeal. On December 30, 1997, Pachak filed with the South Carolina Supreme Court a "no merit" *Anders* final brief of appellant and petition to be relieved as counsel, in which he raised the following issue on behalf of the petitioner:

> Whether the pre-indictment delay and trial of appellant some 29 years after the incident violated due process?

On July 29, 1998, the South Carolina Supreme Court issued an order in which it denied the petition to be relieved as counsel and ordered full briefing of the following issue:

> Did the pre-indictment delay of twenty-nine years between the alleged crime and trial of appellant violate due process?

Accordingly, Pachak filed a final brief of appellant raising that issue on September 25, 1998. The State filed a final brief of respondent on November 23, 1998. On January 13, 1999, the South Carolina Supreme Court issued an opinion affirming the conviction and sentence. *State v. Truesdale*, Memo. Op. No. 99-MO-003 (S.C. January 13, 1999). The remittitur was issued on February 3, 1999.

The petitioner next filed a *pro se* application for post-conviction relief ("APCR1") on December 15, 1999 (99-CP-20-0327), in which she asserted the following issues (verbatim):

> (1)  Pre-Indictment delay violated due process.
>
> (2)  The Composition of 1995 corner's jury and action taken without cause and unlawful.
>
> (3)  The composition of 1996 grand jury and action taken without cause and unlawful.
>
> (4)  Speedy trial denied.
>
> (5)  Prosecution gave court false information by ommission [sic] of known facts.
>
> (6)  Insufficient evidence to convict.

2

>    (7)    Tainted evidence.
>
>    (8)    Tainted jury.
>
>    (9)    Any additions or amendments submitted by legal counsel.

The State filed a return and motion to dismiss dated July 9, 2001. On October 26, 2001, the Honorable Kenneth G. Goode signed an order dismissing the APCR1 without prejudice for failure to prosecute. The petitioner filed a notice of appeal with the South Carolina Supreme Court, but also filed at the trial level a Rule 60(b), SCRCP, motion to vacate the October 26, 2001, order. Judge Goode granted the latter motion based on inadvertence by an order dated September 10, 2002, and, by order dated January 7, 2003, the South Carolina Supreme Court dismissed the appeal from the October 26, 2001, order.

An evidentiary hearing in the petitioner's APCR1 was held before the Honorable Paul E. Short, Jr., on March 17, 2003. The petitioner was present and represented by appointed counsel Ross B. Burton. The petitioner called herself to testify at the hearing; the State called both trial attorneys as well as Ann T. Letrick. On May 30, 2003, Judge Short issued an order of dismissal in which he rejected the petitioner's allegations.

A timely notice of appeal was filed with the South Carolina Supreme Court from Judge Short's order of dismissal. Robert Pachak, of the South Carolina Office of Appellate Defense, was appointed to represent the petitioner in her APCR1 appeal. On January 28, 2004, Pachak filed a "no merit" *Johnson* petition for writ of certiorari and petition to be relieved as counsel, in which he raised the following issue:

> Whether there was any evidence to support the PCR judge's findings that petitioner was not entitled to post-conviction relief?

The petitioner filed a *pro se* petition as well. On December 1, 2004, the South Carolina Supreme Court issued an order in which it denied the petition for writ of certiorari and granted the motion to be relieved. The remittitur was sent down on December 17, 2004.

On May 26, 2005, the petitioner filed a second PCR action (05-CP-20-0163) ("APCR2"), in which she raised the following claims (verbatim):

(1)     Speedy trial denied.

(2)     Prosecution gave court false information at trial and altered documents to substanciate attachment.

The State filed a return and motion to dismiss dated August 12, 2005. Attorney Harry L. Devoe, Jr., was appointed to represent the petitioner in her APCR2.

An hearing on the motion to dismiss in the petitioner's APCR2 was held before the Honorable John C. Hayes, III, on February 28, 2006. The same day, Judge Hayes issued an order in which he found the APCR2 should be dismissed as successive and time-barred and in which he rejected the petitioner's claims of after-discovered evidence. On March 10, 2006, Devoe filed a "Motion for Reconsideration of Order." The State filed a return to that motion dated March 17, 2006, and Judge Hayes denied the motion by order dated March 29, 2006.

On April 10, 2006, Attorney Devoe filed with the state supreme court a notice of appeal from Judge Hayes' APCR2 order. On April 26, 2006, Devoe filed the "Rule 227(c) Explanation", as requested. The South Carolina Supreme Court issued an order on May 24, 2006, in which it dismissed the APCR2 appeal for failure to show an arguable basis for appeal, as required by Rule 227(c), SCACR. The remittitur was sent down on June 9, 2006.

On May 15, 2007, the petitioner filed a third PCR action (07-CP-20-0128) ("APCR3"), in which she raised the following claim:

Attorney failed to file a Brady motion.

4

The State filed a return and motion to dismiss on July 13, 2007. Attorney Gwendlyne Y. Smalls was appointed to represent the petitioner in her APCR3.

An hearing on the motion to dismiss in the petitioner's APCR3 was held before the Honorable Brooks Goldsmith on August 30, 2007. On September 20, 2007, Judge Goldsmith issued an order in which he found the APCR3 should be dismissed as successive and time-barred and in which he rejected the petitioner's claims of after-discovered evidence.

A timely notice of appeal was filed with the South Carolina Supreme Court by Attorney Smalls. On November 7, 2008, the state supreme court dismissed the APCR3 appeal for failure to show an arguable basis for appeal as required by Rule 227(c), SCACR. The remittitur was sent down on November 27, 2007.

In her petition now before this court, the petitioner raises the following allegations (verbatim):

> (1)   No Brady motion ever filed – ineffective assistance of both trial and PCR counsels – in not filing a Brady at trial or ... not exposing the error.
>
> (2)   Trial just was wrong in denying motion to change of venue.
>
> (3)   Speedy trial denied.
>
> (4)   Jury's decision unreasonable in the light of evidence presented and the lack of it.

On June 18, 2008, the respondent filed a motion for summary judgment. By order filed June 19, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if she failed to adequately respond to the motion. On July 21, 2008, the petitioner filed her response to the motion for summary judgment, as well as a motion for appointed counsel, which was denied by order filed July 22, 2008.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

Title 28, United States Code, Section 2244(d), provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## ANALYSIS

The respondent argues that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court agrees. The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The petitioner's conviction was finalized by the conclusion of direct review on April 13, 1999, or 90 days after January 13, 1999, the date the South Carolina Court of Appeals issued its opinion affirming the petitioner's convictions. *See, e.g. Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000) (direct review concludes at expiration of time for seeking certiorari from United States Supreme Court). Accordingly, the limitations period expired on April 13, 2000, unless the period was at any time tolled for any properly filed state PCR application. 28 U.S.C. § 2244(d)(2).

The petitioner filed her APCR1 on December 15, 1999. At that point, 246 days of non-tolled time ran since the period of limitations began on April 13, 1999. The period of limitations was tolled during the pendency of the APCR1 until no later than December 17, 2004, when the South Carolina Supreme Court issued the remittitur from its order denying certiorari review on the APCR1 order of dismissal. *See, e.g. Ott v. Johnson*,

192 F.3d 510, 513 (5th Cir. 1999) (tolling does not include 90 days for United States Supreme Court certiorari petition from final denial by state's highest court of collateral action).

The state court found that both the APCR2 and APCR3 were barred by the state PCR statute of limitations. Accordingly, neither of these applications would toll the period of limitations as they were not "properly filed." *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (Time-barred applications for state collateral review are not "properly filed" applications that trigger statutory tolling.). As the petitioner is a prisoner, she should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. Unfortunately, the copy of the envelope available in the court's docket does not contain a mailroom stamp (*see* petition envelope, court docket no. 1-2). Giving the petitioner every benefit of the doubt, the court will consider the date the petitioner signed her petition, December 17, 2007, as the delivery date. Accordingly, 1095 days of non-tolled time accrued from the disposition of the APCR1 on December 17, 2004, until the petitioner signed her federal petition now before this court. Adding the 246 days that accrued between the disposition of the direct appeal and the filing of the APCR1 results in a total of 1341 days of non-tolled time, or over 3½ years.

Even assuming for purposes of this motion that the petitioner's APCR2 and APCR3 tolled the statute of limitations, the petitioner's filing is still untimely. The petitioner filed her APCR2 on May 26, 2005. Accordingly, an additional 160 days of non-tolled time accrued between resolution of the APCR1 appeal on December 17, 2004, and the filing of the APCR2 on May 26, 2005. The APCR2 would have tolled the statute of limitations until no later than June 9, 2006, when the South Carolina Supreme Court issued the remittitur from the order dismissing the APCR2 appeal.

The petitioner filed her APCR3 on May 15, 2007. Assuming again that this action tolled the period of limitations, an additional 340 days of non-tolled time accrued between the resolution of the APCR2 appeal on June 9, 2006, and the filing of the APCR3 on May 15, 2007. This period would have been tolled until no later than November 27, 2007, when the South Carolina Supreme Court issued the remittitur from the order dismissing the APCR3 appeal.

Using the date the petitioner signed her petition, December 17, 2007, as the *Houston v. Lack* delivery date, an additional 20 days of non-tolled time accrued after the disposition of her APCR3. Accordingly, assuming that all three of the PCRs tolled the period of limitations, a total of 766 days (246+160+340+20=766), or more than two years, of non-tolled time accrued since the petitioner's period of limitations began to run on April 13, 1999, which is well in excess of the AEDPA's one-year filing requirement.

The petitioner argues that her petition is timely because she was unaware until April 2007 that her attorney allegedly did not file a *Brady* motion. She contends she became aware of this when she wrote the Clerk of Court and asked for copies of all motions filed and that her prior PCR attorneys did not do this. In ground one of her petition, she contends that had her counsel filed a *Brady* motion the initial arrest warrant would have been produced, which would have been relevant to her speedy trial argument.

Subsection (d)(1)(D) of section 2244 provides that in the appropriate case the limitations period can run from the "date on which the factual predicate of the claim or claims was discovered or could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Moreover, the limitations period is subject to the doctrine of equitable tolling. In *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Id.* at 330. The court went on to find:

> Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. *See Taliani*, 189 F.3d at 598 (holding that a lawyer's miscalculation of a limitations period is not a valid basis for equitable tolling); *see also Sandvik*, 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay was assertedly the result of a lawyer's decision to mail the petition by ordinary mail rather than to use some form of expedited delivery); *Fisher*, 174 F.3d at 714-15 (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Miller v. Marr*, 141 F.3d at 978 (same); *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254, 257 (Fed. Cir.1995) (holding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

*Id.* at 330-31.  *Harris* specifically cited a case with approval that held a plaintiff's unfamiliarity with the law and lack of counsel were insufficient to overcome the limitations period. *See Barrow v. New Orleans S.C. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (cited in *Harris*, 209 F.3d at 331).

        The petitioner was convicted in 1996 for murdering her invalid husband back in 1967.  Apparently, information came to light in the early 1990s after the petitioner was convicted in Virginia for charges related to the death of a subsequent husband.  After jury selection but before testimony in the 1996 case, the defense made two motions to dismiss: (1) a due process motion to dismiss based on the pre-indictment delay of 29 years, and (2) a motion for a speedy trial.  The defense admitted it had not made a request for a speedy trial until that moment.  During the solicitor's response on the speedy trial issue, he noted that the petitioner was served a detainer in 1994 when she was in a Virginia prison for charges related to killing another husband, and the petitioner never made any request to have the charges resolved under the Interstate Compact on Detainers (App. 127-48).  At the end of the case, the defense re-raised the issue (App. 393-402).  The judge found no speedy trial violation or due process violation from the pre-indictment delay.  During the discussion, the judge noted there had been no arrest, and the solicitor corrected the judge that there had been a warrant issued but it was not served until the petitioner came to South Carolina (App. 403-06).  The South Carolina Supreme Court rejected on appeal any claim as to speedy trial or pre-indictment delay.

        At PCR, the petitioner testified that an arrest warrant was served on her in Virginia in December of 1993.  She stated that she was prejudiced by the delay from that time until the time of indictment in that the victim's mother died.  However, when asked what the mother could offer, all the petitioner could say was that the South Carolina officers who interviewed her in 1993 told her the victim's family told them the family did not want to bring all this up again (App. 546-49; 575).

11

Trial counsel testified in PCR he did not ever recall seeing a warrant and that when he was appointed the petitioner was already incarcerated here and was then directly indicted. He also noted the petitioner's claim that an assistant solicitor signed the warrant would of course be unusual, but he agreed that the South Carolina officers would have used some document to place a detainer on the petitioner when they interviewed her in the Virginia prison (App. 577-78). On cross examination, the defense attorney noted that he and the APCR1 counsel looked at the clerk's file and did not see an arrest warrant in the file. The indictment had a warrant number, but it had been struck through and "DI" written for "direct indictment" (App. 584-85). Counsel agreed the trial judge stated during the discussion of the speedy trial and pre-indictment delay issues that he had dismissed a case previously where there had been a two and a half year delay from arrest to indictment, but stated the judge was referring to an instance where the defendant had made a speedy trial request (App. 599-601).

The PCR court ruled only on a claim that counsel was ineffective for failing to file a continuance which, the petitioner contended, among other things would have allowed counsel to find this arrest warrant. The PCR1 court rejected the claim finding no warrant had been presented and no prejudice (App. 616). The PCR1 appeal was dismissed.

In the APCR2, the petitioner contended that with the aid of a person at the Virginia Department of Corrections she had recently discovered the warrant supposedly served on her in 1993. After a hearing, the APCR2 court found her claims failed to meet the test for after discovered evidence, and the South Carolina Supreme Court dismissed the appeal. In the APCR3, the petitioner claimed she had just found out her trial counsel allegedly failed to file discovery motions, which would have led to the arrest warrant. The APCR3 court found that this could have be discovered with the exercise of due diligence at the time of the prior two PCRs and that any claim with regard to the arrest warrant was

barred by *res judicata* as it had been ruled on at the APCR2. The South Carolina Supreme Court dismissed the appeal.

Given these facts, as argued by the respondent, any claim as to the arrest warrant is insufficient to survive the federal limitations period by application of either the statutory discovery rule or the doctrine of equitable tolling. In her motion for reconsideration of order filed in the APCR2, the petitioner contended she "discovered" the alleged arrest warrant in 2004. However, the petitioner did not file her APCR2 until May 26, 2005. Even assuming she did not get the warrant until as late as December 31, 2004, then 146 days of non-tolled time passed from the time she allegedly discovered the warrant until the time of the APCR2. Even assuming the APCR2 tolled the limitations period, it would have done so until no later than June 9, 2006, when the South Carolina Supreme Court issued the remittitur from the order dismissing the APCR2 appeal. The petitioner did not file her APCR3 until May 15, 2007. Assuming that this action tolled the federal period of limitations, an additional 340 days of non-tolled time accrued between resolution of the APCR2 appeal on June 9, 2006, and the filing of the APCR3 on May 15, 2007. Again, assuming this action tolled the limitations period at all, it would have been tolled until no later than November 27, 2007, when the South Carolina Supreme Court issued the remittitur from the order dismissing the APCR3 appeal. Assuming a delivery date of December 17, 2008, then an additional 20 days of non-tolled time accrued after the APCR3. The total since the latest date possible that the petitioner allegedly discovered the arrest warrant is 506 days (146+340+20=506), well in excess of one year. Giving the petitioner every benefit of the doubt, this total would preclude application of the discovery rule and show a lack of diligence that would preclude application of the doctrine of equitable tolling. Indeed, there is no reason why the petitioner could not have contacted the Virginia prisons at the time of her first PCR to get the alleged warrant, but even if she could not, her delay after she got the warrant is more than enough to apply the limitations period.

In her APCR3 and in the instant federal petition, the petitioner claimed she was unaware until April 2007 that her trial attorney allegedly failed to file discovery motions, because she wrote the clerk for copies of court filings and discovered there was no such motion in there. She states that as a layperson she was unaware until then that such a motion should be filed, and none of her prior PCR attorneys had raised the issue. It is interesting that her trial counsel stated on the record that he had filed a discovery motion pursuant to Rule 5, SCRCrimP (App. 149-50). However, the only thing of significance the petitioner claims was missed by the alleged failure to file a *Brady* motion was the supposed arrest warrant. As the PCR3 court found, this is simply a different vehicle to litigate the arrest warrant claim rejected in the APCR2, and is of course therefore even more untimely than the arrest warrant claim in and of itself. Moreover, alleged lack of knowledge of the law or mistake of collateral attack counsel is not sufficient for equitable tolling. *Harris*, 209 F.3d at 330-31. Accordingly, neither application of the discovery rule nor the doctrine of equitable tolling is warranted.

Finally, as argued by the respondent, neither doctrine is applicable because the arrest warrant simply does not provide the factual predicate for a valid claim. In applying the precedent of the United States Supreme Court, the South Carolina Court of Appeals has stated:

> The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the South Carolina Constitution provide that a criminal defendant is entitled to a speedy trial. *State v. Brazell*, 325 S.C. 65, 480 S.E.2d 64 (1997). In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court identified several factors to be used in determining whether a defendant has been denied the right to a speedy trial including:
> (1) the length of delay,
> (2) the reason the government uses to explain the delay,
> (3) when and how the defendant asserted his speedy trial right, and
> (4) the prejudice to the defendant.
> *Id.*

*State v. Kennedy*, 528 S.E.2d 700, 703-704 (S.C. Ct. App. 2000). Moreover, in the due process context of pre-indictment delay, the petitioner must show substantial actual prejudice, and to show such prejudice, the petitioner must: (1) identify the witness to be called; (2) demonstrate with specificity the expected content of the witness's testimony; (3) show serious attempts to locate the witness; and (4) show the information was not available from other sources. *Jones v. Angelone*, 94 F.3d 900, 907-908 (4th Cir. 2000).

As to the factors, it first must be noted that assuming the officers served an arrest warrant on the petitioner in 1993, it is undisputed that the petitioner never made a speedy trial request until her case was tried, and never sought to make use of the procedures in the Interstate Compact on Detainers at any time. Moreover, she simply cannot even establish a *prima facie* or arguable case of prejudice, as all she has alleged that happened in the two plus years from alleged service of the arrest warrant to indictment is the death of the victim's mother. However, she has not shown one thing of value to which the mother could have testified, other than a claim that agents told her the mother told the agents she did not want to dredge up the past. Not only is this obviously too tenuous a proffer, as the petitioner offered no admissible proof from the agents as to this alleged statement, but even if true that statement provides no specific help to any defense of the petitioner. Further, during pre-trial discussions, it was brought out that the victim's mother had made statements to Virginia police that were incriminating to the petitioner. Therefore, if anything, her death was a benefit to the defense (App. 133-34; 137). *See generally Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony); *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996) (rejecting habeas claim that attorneys should have pursued intoxication defense where petitioner offered no proof his alleged cocaine usage made him incapable of intent or deliberation)*; See, e.g. Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (habeas corpus

15

petitioner did not establish prejudice because he failed to allege what exculpatory evidence would have been produced had counsel made a *Brady* motion).

Based upon the foregoing, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## CONCLUSION AND RECOMMENDATION

Being "mindful that Congress enacted §2244(d) 'with the ... purpose of curbing the abuse of the statutory writ of habeas corpus,'" *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001) (quoting *Crawley v. Catoe*, 257 F.3d 395, 400 (4th Cir. 2001)), this court concludes that the petition in this case was untimely filed, even when properly tolled.[1]

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 19) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003), *cert. denied*, 541 U.S. 905 (2004) (affirming dismissal of petition filed one day late).

s/William M. Catoe
United States Magistrate Judge

January 15, 2009

Greenville, South Carolina

---

[1] The decision of the Fourth Circuit Court of Appeals in *Frasch v. Peguese*, 414 F.3d 518 (4th Cir. 2005), is inapposite on the facts.